**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TELEMEDICINE SOLUTIONS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-3431 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| WOUNDRIGHT TECHNOLOGIES, LLC, ) | Magistrate Judge Sheila Finnegan |
| ) | |
| Defendant. ) | |

**DEFENDANT'S BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**

Drew G.A. Peel (ARDC# 6209713)
Kevin B. Duff (ARDC# 6210491)
John E. Murray (ARDC# 6300399)
RACHLIS DUFF ADLER & PEEL, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3950 (gen.)
(312) 733-3952 (fax)

Antoinette M. Tease, P.L.L.C.
(*pro hac vice* application pending)
175 North 27th Street, Suite 1206
Billings, Montana 59101
(406) 294-9000 (gen.)
(406) 294-9002 (fax)

*Attorneys for Defendant WoundRight Technologies, LLC*

I. **INTRODUCTION**

Plaintiff Telemedicine Solutions LLC ("Telemedicine") has filed a ten-count complaint against defendant WoundRight Technologies, LLC ("WoundRight"), alleging trademark infringement and related claims. The crux of Telemedicine's complaint is that the term "WoundRight," when used to identify and market WoundRight's free software application via its website and the Internet, confuses consumers and diverts business from Telemedicine with respect to a similar software application that Telemedicine has developed and that Telemedicine identifies and markets with several "WoundRounds" marks.

Putting to one side the merits of Telemedicine's claims (and they are meritless), Telemedicine's lawsuit should be dismissed pursuant to Rule 12(b)(2)[1] because this Court does not have personal jurisdiction over WoundRight. WoundRight has no systematic and continuous contacts with Illinois that would support an exercise of general jurisdiction. Nor is WoundRight's maintenance of a website that can be accessed by residents of Illinois, but from which no products or services can be purchased and which is not specifically targeted at residents of Illinois, a minimum contact that is sufficient for this Court to support an exercise of specific jurisdiction over WoundRight.

Moreover, Telemedicine's lawsuit also should be dismissed pursuant to Rule 12(b)(3) because venue is not proper in this District. WoundRight cannot be deemed a resident of this District, and a substantial part of the facts and circumstances giving rise to Telemedicine's claims has not been alleged to have occurred in this District. *See* 28 U.S.C. §§ 1391(b)(1) - (2).

Finally, in the alternative to dismissal, Telemedicine's lawsuit should be transferred to the District of Wyoming, either pursuant to 28 U.S.C. § 1406(a) if the Court finds that venue in

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure.

1

this District is not proper, or pursuant to 28 U.S.C. § 1404(a) if the Court finds that venue in this District is proper. It is well-established in intellectual property lawsuits like this one that where the alleged infringers' actions took place in the proposed transferee forum, where the alleged infringers' employees, agents and documents are in the proposed transferee forum, and where any injunctive relief would have to be enforced in the transferee forum, then transfer is appropriate. Moreover, the District of Wyoming is less congested, quicker from filing to trial, and a cheaper forum in which to litigate – all of which public interest considerations also support a transfer here.

## II. BACKGROUND

### A. *Personal Jurisdiction & Venue Facts*

Telemedicine has the burden of establishing this Court's personal jurisdiction and venue over WoundRight. *See, e.g.*, *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998) (personal jurisdiction); *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008) (venue). Telemedicine has the burden of submitting competent evidence to establish personal jurisdiction and venue where, as here, the defendant has submitted a declaration controverting the plaintiff's complaint allegations. *See, e.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 & n.13 (7th Cir. 2003) (personal jurisdiction); *Amtron, Inc. v. Nordson Corp.*, 1973 WL 19876, at *2 (N.D. Ill. Sept. 14, 1973) (venue).

In this case, Telemedicine's complaint contains not well-pleaded facts respecting personal jurisdiction, but vague conclusions alleged "[u]pon information and belief." (*See, e.g.*, Compl. ¶¶ 4 & 7) Moreover, while Telemedicine's complaint alleges that WoundRight maintains a website accessible in Illinois and has run Internet advertisements accessible in

Illinois (*see id.* ¶¶ 19-20 & Exs. 2-3), Telemedicine does not allege (and it cannot be inferred from Telemedicine's conclusory allegations) that either WoundRight's website or the Google Ad referenced in its complaint were specifically directed at or targeted toward Illinois residents so as to exploit the Illinois market.

Moreover, as the declaration of WoundRight's Chief Executive Officer, Timothy Renz, establishes, WoundRight's contacts with Illinois are *de minimis*. (*See generally* Ex. 1, Renz Decl. ¶¶ 1-56) WoundRight has never: sold anything to any customers located in Illinois (*id.* ¶ 28); initiated sales by an email sent to or from one or more persons or entities located in Illinois (*id.* ¶ 29); contracted with any individual or business located in Illinois (*id.* ¶ 30); had a registered agent for service of process in Illinois, maintained a retail store in Illinois, had any business operations, physical business presence or physical business facilities in Illinois, had an Illinois mailing address or telephone number, or kept or stored any of its business records in Illinois (*id.* ¶¶ 31-33, 45); owned any property, assets, or accounts in Illinois (*id.* ¶¶ 34-35); had any employees in, or had employees travel to, Illinois for any business purpose (*id.* ¶¶ 36, 40-41); mentioned Illinois in any internet advertisement or on its website (*id.* ¶¶ 37-39); paid any sales or income tax to Illinois, or applied for, been required to obtain, or obtained a license to do business in the State of Illinois (*id.* ¶¶ 42-43); or, to its knowledge, had its applications used in Illinois to treat patients or had medical data for Illinois patients stored on its servers (*id.* ¶ 44). Thus, WoundRight has not purposely exploited the Illinois market for its business. (*Id.* ¶ 46)

Further, in terms of WoundRight's website and the Google ad referenced in Telemedicine's complaint, neither of these was specifically directed at or targeted toward Illinois residents. (Ex. 1, Renz Decl. ¶¶ 37-39) WoundRight's website pages make no mention of Illinois, these pages are accessible by all users of the Internet regardless of residence, and these

3

pages are not otherwise targeted at or directed toward Illinois residents. (*Id.*) Similarly, the Google ad referenced in Telemedicine's complaint ran for only five days, it is no longer accessible on the Internet, and it was not directed at Illinois residents. (*Id.* ¶¶ 38-39)

### B. Facts Respecting The Convenience Of The District of Wyoming

A party moving for the transfer of venue pursuant to 28 U.S.C. § 1404 or 28 U.S.C. § 1406 bears the burden of establishing that the proposed transferee forum is clearly more convenient than the forum chosen by the plaintiff. *See, e.g.*, *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986).

WoundRight's sole office and corporate headquarters has at all times been located in Caspar, Wyoming. (Ex. 1, Renz Decl. ¶ 15) WoundRight's remaining office, where its products and services are developed, is located in Laramie, Wyoming. (*Id.*) All of WoundRight's business records, whether in paper or electronic form, are located in Wyoming. (*Id.* ¶ 16) All of the individuals involved in creating WoundRight's products and services, servicing WoundRight's products, selling WoundRight's products, and conducting WoundRight's business operations have at all times been located in Wyoming. (*Id.* ¶ 17) All of WoundRight's employees, officers and owners have at all times been citizens of and reside in Wyoming. (*Id.* ¶ 18) All of WoundRight's sales representatives have at all times been citizens of and reside in Wyoming. (*Id.* ¶ 19)

In terms of fact witnesses with personal knowledge of WoundRight's business activities that are alleged by Telemedicine to be actionable, all of the fact witnesses employed by WoundRight reside in and are citizens of Wyoming, and likely third-party witnesses that WoundRight is able to identify at this juncture reside in and are citizens of Wyoming and Montana. (*Id*. ¶ 47) None of the aforementioned party and third-party fact witnesses resides in

4

or is a citizen of Illinois, and many of these witnesses cannot be compelled to appear in the United States District Court for the Northern District of Illinois for any trial of this matter, whereas such fact witnesses would be subject to compulsory process that could compel them to appear for any trial of this matter in the United States District Court for the District of Wyoming. (*Id.* ¶ 48) Similarly, given the proximity of these witnesses to the District of Wyoming, WoundRight believes that it would be less costly for these party and third-party witnesses to appear for deposition and/or a trial in the District of Wyoming as opposed to appearing for a deposition and/or a trial in the Northern District of Illinois. (*Id.* ¶ 49) To Defendant's knowledge, there are no third party fact witnesses who reside in Illinois or for whom the Northern District of Illinois is a more convenient forum than the District of Wyoming. (*Id.* ¶ 51) Insofar as an inspection of Defendant's business premises is required in connection with the above-captioned lawsuit, the District of Wyoming is where these business premises are located. (*Id.* ¶ 52)

### III. ARGUMENT

#### A. *Dismissal For Lack Of Personal Jurisdiction Is Proper.*

The Court should dismiss Telemedicine's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2). **First**, there is no general personal jurisdiction here, because Telemedicine has not alleged and cannot allege the kind of systematic and continuous contacts that would be required to find such jurisdiction in a case like this one. *See, e.g.*, *uBID, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 425-426 (7th Cir. 2010) (despite evidence of massive marketing efforts addressed to Illinois residents and numerous sales to Illinois residents, such Internet-based contacts were not sufficient to support exercise of general personal jurisdiction).

*Second*, Telemedicine's conclusory complaint allegations are insufficient to establish a basis for exercising specific personal jurisdiction in a case like this one. As discussed above, the only basis that Telemedicine's complaint competently alleges for finding personal jurisdiction is that WoundRight operates a website that is accessible by Illinois residents and that WoundRight ran an Internet advertisement that was accessible by Illinois residents. (*See* Compl. ¶¶ 19-20) However, controlling authority makes clear that such attenuated contacts with Illinois are not sufficient to establish that WoundRight purposely exploited the Illinois market and that this Court therefore has jurisdiction over the person of WoundRight.

To the contrary, as the Seventh Circuit has held, "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (quoting *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010)). Thus, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." *be2*, 642 F.3d at 558-59 (emphasis in original; citing for support, *inter alia*, *uBID,* 623 F.3d at 427-29; *Hemi Group,* 622 F.3d at 758). "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *Id.* (collecting cases); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) (similar); *Sage Products, Inc. v. Primo, Inc.*, 2013 WL 812319, at *4 (N.D. Ill. Mar. 5, 2013) (similar); *AirFX, LLC v. J.D. Braun*, 2011 WL 5523521, at *3 (S.D. Ind. Nov. 14, 2011) (similar).

6

Thus, Telemedicine's conclusory allegations respecting WoundRight's operation of a website that is accessible by Illinois residents -- but which in fact does not specifically target Illinois residents, which has limited interactivity, and which cannot be used to purchase WoundRight's products and services -- is not a sufficient basis for finding specific personal jurisdiction over WoundRight.

Similarly, placing an Internet advertisement that was accessible by Illinois residents (albeit for only five days), but which was not specifically targeted at or addressed to Illinois residents, also is insufficient for the exercise of specific personal jurisdiction in this case. "'Such general advertising is not the type of 'purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.'" *Brandon Wade Licensing, LLC v. Terezowens.com, LLC,* 2013 WL 1446356, at *4 (N.D. Ill. Apr. 9, 2013) (quoting *IDS Life Ins. Co. v. SunAmerica, Inc.,* 958 F. Supp. 1258, 1268 (N.D. Ill. 1997) (citation omitted), *reversed on other grounds,* 136 F.3d 537 (7th Cir. 1998)).

Therefore, Telemedicine has not shown and cannot show that WoundRight deliberately targeted or exploited the Illinois market, the generic assertions in Telemedicine's complaint are at best "attenuated contacts that could not give rise to personal jurisdiction without offending traditional notions of fair play and substantial justice," *be2*, 642 F.3d at 559, and the Court should dismiss Telemedicine's complaint pursuant to Rule 12(b)(2).

### B.   *Dismissal For Improper Venue Also Is Proper.*

The Court also should dismiss Telemedicine's complaint pursuant to Rule 12(b)(3) because venue is not proper in this District. With respect to venue, Telemedicine alleges merely that "[v]enue is proper in this District under, *inter alia*, the provisions of Section 1391 of Title 28, United States Code." (Compl. ¶ 8.) Section 1391(b), in turn, in relevant part provides that a

7

civil action may be brought in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; or [¶] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated…." Telemedicine has not competently alleged facts establishing that venue is proper on either basis in this District.

*First*, with respect to 28 U.S.C. § 1391(b)(1), Telemedicine correctly alleges that WoundRight resides in Wyoming, not Illinois. (*See* Compl. ¶ 2) And while 28 U.S.C. § 1391(c)(2) provides that an entity will be deemed to reside wherever it is amenable to personal jurisdiction, for the reasons set forth above, WoundRight is not amenable to personal jurisdiction in this District.

*Second*, with respect to 28 U.S.C. § 1391(b)(2), Telemedicine has not alleged that a substantial part of the actions or omissions giving rise to its claims occurred in this District. Moreover, in terms of WoundRight's alleged actions and omissions, Telemedicine has not alleged – and it cannot allege – that any such actions or omissions giving rise to Telemedicine's claims occurred in Illinois. Indeed, the activities of WoundRight about which Telemedicine is complaining occurred in Wyoming. Nor can Telemedicine establish venue merely by its allegation that the Defendant transacted business in Illinois by operating a website for its goods/services. (Compl. ¶ 7.) *See, e.g.*, *Dakota Beef, LLC v. Pigors*, 445 F. Supp. 2d 917, 920-21 (N.D. Ill. 2006) (fact that defendant had website equipped to take orders not enough to establish venue where defendant never directed any solicitations at Illinois, did not travel to Illinois to sell products, did not maintain servers in Illinois, and never shipped orders to Illinois).

Accordingly, the Court also should dismiss this lawsuit pursuant to Rule 12(b)(3) because Telemedicine has not competently alleged facts establishing that venue is proper in this District.

8

### C.     Alternately, Transfer To The District Of Wyoming Is Proper.

The Court should transfer this lawsuit to the United States District Court for the District of Wyoming should the Court decline to dismiss (or decline to decide WoundRight's arguments for dismissal of) this lawsuit on personal jurisdiction or venue grounds.[2]

A transfer pursuant to 28 U.S.C. § 1406(a) is proper if the proposed transferee forum is one in which the action could have been brought originally and the Court finds it is in the interest of justice to transfer rather than dismiss the action. A transfer pursuant to 28 U.S.C. § 1404(a) is "appropriate when (1) venue is proper in the transferor court and venue and jurisdiction would be proper in the proposed transferee court, (2) the transfer would serve the convenience of the parties, (3) the transfer would serve the convenience of the witnesses, and (4) transfer would be in the interests of justice." *Daly v. Central Refrigerated Serv., Inc.*, 2011 WL 2637246, at *1 (N.D. Ill. July 5, 2011) (Dow, J.).

**Venue And Jurisdiction Would Be Proper In The District Of Wyoming.** There can be no dispute that the District of Wyoming is a proper venue for this lawsuit and that the United States District Court for the District of Wyoming has personal jurisdiction over WoundRight. (*See* Ex. 1, Renz Decl. ¶¶ 2-6; Compl. ¶ 2) *See also* 28 U.S.C. §§ 1391(b)(1) & (c)(2). Thus, should the Court find that venue in this District is improper (and it should for the reasons set forth above), then pursuant to 28 U.S.C. § 1406(a) the Court would have the discretion to transfer this lawsuit to the District of Wyoming instead of dismissing it.

---

[2] It is well established that the Court may transfer this lawsuit without first deciding whether it has personal jurisdiction over WoundRight or whether venue is proper in this District. *See, e.g.*, *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007); *Am. Academy of Implant Dentistry v. Am. Dental Implant Ass'n*, 2013 WL 238876, at *2 n.2 (N.D. Ill. Jan. 22, 2013) (granting motion to transfer without deciding personal jurisdiction).

**Transfer Would Serve The Convenience Of The Parties And Witnesses.** "With respect to the convenience of the parties and witnesses, when deciding a motion to transfer a court must consider: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums. *Am. Academy of Implant Dentistry v. Am. Dental Implant Ass'n*, 2013 WL 238876, at *1 (N.D. Ill. Jan. 22, 2013) (Zagel, J.) (quotation marks and citation omitted).

While a plaintiff's choice of forum is entitled to some weight, "where, as here, 'the cause of action did not conclusively arise in the chosen forum,' the plaintiff's choice is given less weight." *Id.* (quoting *Bajer Design & Marketing, Inc. v. Whitney Design, Inc.*, 2009 WL 1849813, at *2 (N.D. Ill. June 26, 2009)). *See also Robison v. Town of Madison*, 752 F. Supp. 842, 847 (N.D. Ill. 1990) ("[I]f the chosen forum is not exclusively the place where the cause of action arose, the plaintiff's choice of forum is only given consideration equal to other factors, including the interests of justice[.]"). Moreover, where, as here, none of the conduct giving rise to the claims occurred in the forum the plaintiff has chosen, then the plaintiff's choice of forum is entitled to little weight. *See, e.g.*, *Daly*, 2011 WL 2637246, at *1 ("The Seventh Circuit has stated, however, that the Plaintiff's choice of forum has only 'minimal value where none of the conduct occurred in the forum selected by the plaintiff.'") (quoting *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)).

WoundRight has no offices or employees in Illinois, all of WoundRight's offices and employees have at all times been in Wyoming, WoundRight's attorneys involved in registering its allegedly infringing trademark are in Wyoming and Montana, and thus none of the decisions

and actions by WoundRight's employees and attorneys that allegedly infringe Telemedicine's trademarks were made or taken in Illinois. (Renz Decl. ¶¶ 15-21, 28-56)

Moreover, WoundRight has not sold any allegedly infringing products or services in Illinois (*see* Renz Decl. ¶¶ 20, 28-30), and "[i]ntellectual property infringement is generally understood to 'take place' in the state of the infringing sales, rather than in the trademark owner's home state." *Am. Academy of Implant Dentistry*, 2013 WL 238876, at *2 (citing *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928, 932 (N.D. Ill. 2000)).

Indeed, "'[c]ourts assessing whether to transfer intellectual property cases like this one often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often the critical and controlling consideration.'" *Id.* (citing and quoting *S.C. Johnson & Son v. Buzz Off Insect Shield, LLC*, 2005 WL 1838512, at *2 (N.D. Ill. July 28, 2005)). And here, there can be no dispute that the location of WoundRight's place of business, its employees, and its documents is Wyoming and not Illinois. Thus, as in *Am. Academy of Implant Dentistry*, 2013 WL 238876, at *2, the Court should find that the convenience of the parties and the witnesses strongly favors a transfer of this action to the District of Wyoming.

**Transfer Would Be In The Interests Of Justice.** "The interests of justice consideration focuses on the efficient administration of the court system, as opposed to the private interests of the litigants." *Am. Academy of Implant Dentistry*, 2013 WL 238876, at *2. "Courts should consider docket congestion, likely speed to trial in each court, each court's familiarity with the relevant law, the desirability of resolving disputes in each court, and the relationship to the dispute of the communities in which the respective courts sit." *Daly*, 2011 WL 2637246, at *6 (citing for support *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973,

11

978 (7th Cir. 2010)). "This factor may be dispositive in granting or denying transfer of venue 'even where the convenience of the parties and witnesses points toward the opposite result.'" *Id.*

Here, the interests of justice favor a transfer of this lawsuit to the District of Wyoming for at least two reasons. *First*, because the injunctive relief sought by Telemedicine, if granted, would be enforced against WoundRight primarily in Wyoming, it would be more efficient for the District of Wyoming to decide both enforcement and non-enforcement issues arising out of this dispute. *See, e.g.*, *Am. Academy of Implant Dentistry*, 2013 WL 238876, at *2 ("Access to witnesses and documents and the fact that, if the injunctive relief Plaintiff seeks is granted, enforcement would primarily take place in Florida, all favor transfer of this case to Florida in the interests of justice.").

*Second*, it is plain that federal courts sitting in the District of Wyoming are less congested, bring matters to a trial more quickly, and are cheaper to litigate in, than federal courts sitting in the Northern District of Illinois. (*See* Renz Decl. ¶¶ 47-56 & Ex. 3 thereto) Specifically, publicly available Federal Court Management statistics for both the District of Wyoming ("D.Wyo.") and the Northern District of Illinois ("N.D.Ill.") indicate the following: (1) the median time from filing to trial for civil cases is 31.2 months for the N.D.Ill. as of September 30, 2012, whereas it is 11.7 months for the D.Wyo. as of September 30, 2011 (the last month for which such information is available); (2) the percentage of civil cases that are more than three years old in the N.D.Ill. as of September 30, 2012 is 10%, whereas it is 1.9% for the D.Wyo.; (3) the number of civil lawsuits filed in the N.D.Ill. per judge is 535, whereas the number filed in the D.Wyo. per judge is 97; and (4) the median time from filing to disposition for civil cases in the N.D.Ill. as of September 30, 2012 was 6.5 months, whereas for civil cases in the D.Wyo. it was only slightly lengthier (*i.e.*, 8 months). (*Id.*) *Contrast Daly*, 2011 WL 2637246,

at *7 (noting that where median time from filing to trial differed by less than 8 months in both districts, and where median time from filing to disposition was more than 60% greater in proposed transferee district, then interests-of-justice factor was neutral).

Accordingly, should the Court decline to dismiss this lawsuit on personal jurisdiction or venue grounds, it should nevertheless transfer it to the District of Wyoming pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the foregoing reasons defendant WoundRight Technologies, LLC respectfully requests that the Court dismiss plaintiff Telemedicine Solutions LLC's lawsuit pursuant to Rule 12(b)(2) and/or Rule 12(b)(3), or, in the alternative, that it transfer this lawsuit to the District of Wyoming pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a), and that it grant and award WoundRight all further and other relief to which WoundRight may be found entitled.

Respectfully submitted,

**WOUNDRIGHT TECHNOLOGIES, LLC**

By: /s/ Drew G.A. Peel

Drew G.A. Peel (ARDC# 6209713)
Kevin B. Duff (ARDC# 6210491)
John E. Murray (ARDC# 6300399)
RACHLIS DUFF ADLER & PEEL, LLC
542 South Dearborn Street, Suite 900
Chicago, Illinois 60605
(312) 733-3950 (gen.)
(312) 733-3952 (fax)

Antoinette M. Tease, P.L.L.C.
(*pro hac vice* application pending)
175 North 27th Street, Suite 1206
Billings, Montana 59101
(406) 294-9000 (gen.)
(406) 294-9002 (fax)
*Attorneys for Defendant WoundRight Technologies, LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 19, 2013, I caused the foregoing **Defendant's Brief In Support Of Its Motion To Dismiss Or Transfer** to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court, as follows:

      Charles T. Riggs (riggs@riggs.pro)


                      /s/ Drew G.A. Peel